**WO**

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charlotte Dunlap,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner, Social Security<br>Administration,<br><br>Defendant.<br>_____ | Case No. CIV 06-1215-PHX-SMM<br><br>**ORDER** |

Before this Court are a Motion for Summary Judgment filed by Plaintiff Charlotte Dunlap (Dkt. 11) and a Cross Motion for Summary Judgment filed by Defendant Michael J. Astrue[1], Commissioner of the Social Security Administration (SSA) (Dkt. 15). Regarding these motions, the Court must determine (1) if substantial evidence exists to support the decision of the Administrative Law Judge and (2) whether correct legal standards were applied by the Administrative Law Judge.

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should, therefore, be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

# BACKGROUND

## I. Factual History

Charlotte Dunlap (Plaintiff) was born on March 2, 1954. She has a high school education and has been employed as a cashier, sales associate, secretary, care giver and receptionist. (Transcript (Tr.) at 78, 196). On March 22, 2003, at the age of 49, Plaintiff began to allege disability due to pain in her back, shoulder, legs, hips and feet. (Tr. at 44).

On August 13, 2003, Plaintiff saw Dr. Jim C. Kim, M.D., who diagnosed her with fibromyalgia and possible tendinitis. (Tr. at 126). While in treatment with Dr. Kim, Plaintiff was examined by Tomas B. Rios, M.D. (Tr. at 110). Dr. Rios, an internal medicine specialist, also diagnosed Plaintiff with fibromyalgia, but indicated that Plaintiff could perform light work as long as she was not required to forcefully grasp anything with her right hand. (Tr. at 112). Dr. Rios further stated that Plaintiff should not frequently lift anything over 50 pounds. *Id.* After seeing Dr. Rios, Plaintiff continued to see Dr. Kim and, after several months of treatment, he determined that she could not sit, stand or lift for prolonged periods of time. (Tr. at 126). Dr. Kim further opined that Plaintiff should not lift more than ten pounds. *Id.*

During her treatment with Dr. Kim, Plaintiff also saw Dr. Marc Bauder, M.D. These visits to Dr. Bauder occurred in January and February 2004. (Tr. at 138-150). In late 2004, Plaintiff moved from California to Arizona and continued treatment with Dr. Bauder. On December 10, 2004, Dr. Bauder opined that Plaintiff would not be able to stand or walk for more than three hours in an eight hour day. (Tr. at 131). Further, Dr. Bauder stated that Plaintiff could not sit for more than one hour at a time or for more than three hours in an eight hour day. (Tr. at 131). As a result of these restrictions, Dr. Bauder recommended that Plaintiff refrain from full-time employment. *Id.*

Eventually, Plaintiff was referred to Dr. Kenneth Epstein, M.D., a rheumatoid specialist. Dr. Epstien performed a comprehensive rheumatologic evaluation of Plaintiff on April 12, 2005. (Tr. at 153). In his evaluation, Dr. Epstein concluded that Plaintiff

1  did in fact suffer from fibromyalgia and possibly a mild component of degenerative
2  arthritis. *Id.* Dr. Epstien discussed the importance of sleep and exercise with Plaintiff but
3  did not make a follow-up appointment as there was no evidence of any condition other
4  than fibromyalgia or mild degenerative arthritis. *Id.*

5  After receiving and reviewing all of the Plaintiff's medical records, Keith Quint
6  M.D., a state agency reviewing physician, concluded that Plaintiff retained the capacity to
7  lift or carry up to fifty pounds occasionally and up to twenty five pounds frequently. (Tr.
8  at 114). Dr. Quint further opined that Plaintiff could stand and/or walk for a total of six
9  hours in an eight hour day; and sit for a total of six hours in an eight hour day. *Id.* In
10 accordance with these findings, Mark Kelman, a vocational expert, testified that a
11 hypothetical person in Plaintiff's situation could perform work at a light exertional level.
12 (Tr. at 210). Mr. Kelman further testified that a hypothetical person in Plaintiff's
13 situation could perform work as an office helper (2,500 jobs statewide and 160,000
14 nationally); a gate guard (1,000 jobs statewide and 100,000 jobs nationally); and a
15 telemarketer (2,500 - 3,000 jobs statewide). (Tr. at 212). Additionally, Mr. Kelman
16 stated that a hypothetical person in Plaintiff's situation could also perform Plaintiff's past
17 work as a receptionist. (Tr. at 210-211).

18 **II.  Procedural History**

19 On July 25, 2005, Plaintiff filed applications for Disability Insurance Benefits
20 (DIB) and Supplemental Social Security Income (SSI). (Tr. at 61-65, 172-177). These
21 applications were filed under Titles II and XVI of the Social Security Act, 42 U.S.C. §
22 401-433. *Id.* After the claims were denied, Plaintiff requested a hearing before an
23 Administrative Law Judge (ALJ). (Tr. at 44). On August 25, 2005, the ALJ issued a
24 decision denying Plaintiff's DIB and SSI claims. (Tr. at 21). The ALJ's decision became
25 final on April 3, 2006, when the Appeals Council denied Plaintiff's request for review.
26 (Tr. at 6-10). Plaintiff then brought this action for judicial review pursuant to 42 U.S.C.
27 § 405(g).
28

1    Plaintiff filed a motion for summary judgment on August 18th, 2006, pursuant to
2 Rule 56 of the Federal Rules of Civil Procedure (FRCP).  (Dkt.  11).  Defendant filed a
3 response to Plaintiff's Motion for Summary Judgment and a Cross-Motion for Summary
4 Judgment on September 20th, 2006.  (Dkt.  15).  Plaintiff then filed a Response to
5 Defendant's Cross Motion for Summary Judgment and a Reply in Support of Plaintiff's
6 Motion for Summary Judgment on October 1, 2006.  (Dkt.  18).  These motions have
7 been briefed and are now set for disposition by this Court.

## STANDARD OF REVIEW

In the District of Arizona, Social Security appeals are resolved by the process of summary judgment.  Summary judgment is appropriate if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The ALJ's decision must be affirmed by this court if it is supported by substantial evidence and based on proper legal standards.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  "Substantial Evidence is more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).  If the evidence can reasonably support either affirming or reversing the decision of the Commissioner, the Court may not substitute its judgment for that of the Commissioner.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *See Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th cir. 2001).  The ALJ's determinations of law are reviewed *de novo*, although deference is given to a reasonable construction of the applicable statutes.  *See Edlund*, 253 F.3d at 1156; *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  At all times, the claimant carries the burden of proving disability and failure to prove disability justifies a denial of benefits.  *See Ukolov*, 420 F.3d at 1004.

## DISCUSSION

**I. The ALJ's decision must be upheld if it is supported by substantial evidence.**

In this case, the ALJ determined that Plaintiff is suffering from the following impairments: fibromyalgia, mild generalized degenerative arthritis, arthralgia, moderately severe pain, fatigue, and tendinitis in the left shoulder. (Tr. at 20). According to the ALJ, these impairments do not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. *Id.* Thus, the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act. (Tr. at 21).

Plaintiff primarily rests her case on the opinion of the treating physicians, Dr. Kim and Dr. Bauder. Both Dr. Kim and Dr. Bauder indicated that physical restrictions accompany Plaintiff due to her impairments. The opinion of Dr. Bauder further indicated that Plaintiff could not sustain full-time employment. The ALJ rejected the restrictions set forth by Dr. Bauder because they "are not supported by Dr. Bauder's progress notes, which showed little abnormal clinical findings." (Tr. at 19).

The ALJ should give great weight to the opinion of a treating physician unless he rejects it with specific, legitimate reasons based upon substantial evidence of record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In other words, the opinion of the treating physician is binding unless substantial evidence exists to the contrary. *Id.* Thus, in order for ALJ's decision to be sustained, it must be shown that the ALJ rejected Dr. Bauder's opinion with specific and legitimate reasons based on substantial evidence of record.

In his report, Dr. Bauder opined that Plaintiff could not sit for more than one hour at a time and three hours total in an eight hour day; not stand/walk for more than two hours at a time and three hours total in an eight hour day; and only lift/carry up to ten pounds. (Tr. at 131). These restrictions do not coincide with Dr. Bauder's progress notes. Although Dr. Bauder's progress notes do indicate some level of restriction, the notes do not support such a high level of restriction. Specifically, there is no evidence that Plaintiff's ability to sit would be reduced. Further, the notes indicate only minimal

1 abnormalities in terms of clinical findings and thus do not support Dr. Bauder's
2 recommendation that Plaintiff refrain from full-time employment.  As noted by the ALJ,
3 Dr. Bauder's opinion would "require [Plaintiff] to be either bedridden or wheel-chair
4 bound for 2 hours out of an eight hour day, which is not shown in the record."  (Tr.  at
5 19).

6       Additionally, the limitations described by Dr. Bauder are not endorsed by
7 Plaintiff's treating rheumatologist, Dr. Kenneth Epstein, M.D., or by the state agency
8 doctor, T. Rios, M.D.  Plaintiff claims that Dr. Epstein's opinion does, in fact, support the
9 opinion of Dr. Bauder and further that Dr. Epstein did not endorse Dr. Bauder's
10 restrictions because he was never asked to.  (Dkt.  13 at 3).  Dr. Epstein's report does not
11 support Dr. Bauder's proposed restrictions or the notion that Plaintiff cannot continue full-
12 time employment.  Dr. Epstein even stated that he discussed the importance of increasing
13 non-fatiguing exercise with Plaintiff in order to improve her mood.  (Tr.  at 153).
14 Likewise, Dr. Rios stated that Plaintiff is suffering from some pain, but nothing is altering
15 her overall motor strength.  (Tr.  at 112).  He further stated Plaintiff should only be
16 precluded from heavy work, such as lifting and carrying beyond fifty pounds on an
17 occasional basis and twenty five pounds on a frequent basis.  *Id.*

18       The ALJ was correct in finding that the opinions offered by Dr. Epstein and Dr.
19 Rios do not support the severe restrictions outlined by Dr. Bauder.  (Tr.  at 19).  The ALJ
20 was also correct in rejecting the opinion of Dr. Bauder, since his progress notes and
21 clinical observations did not support his overall analysis that Plaintiff refrain from full-
22 time employment.  *Id.*  Social Security regulations require the ALJ to give controlling
23 weight to the medical opinion of the applicant's treating physician as long as the opinion
24 is "well supported by medically acceptable clinical and laboratory diagnostic techniques
25 and is not inconsistent with other substantial evidence in [the] case record."  20 C.F.R. §
26 404.1527(d)(2).  In this case, Dr. Bauder's opinion is not consistent with other substantial
27 evidence in the case record.    His progress notes and proposed restrictions are
28 inconsistent with each other and this, along with the conflicting opinions of Dr. Epstein

- 6 -

and Dr. Rios, constitute specific, legitimate reasons to reject the opinion of Dr. Bauder. Accordingly, this Court finds that there is substantial evidence to reject Dr. Bauder's opinion.

In addition to rejecting Dr. Bauder's opinions, the ALJ also determined that Plaintiff's testimony concerning the severity of her limitations was not fully credible. (Tr. at 18). If the ALJ finds the claimant's [subjective] testimony not to be credible, the ALJ must "specifically make findings that support this conclusion," and the findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit [the] claimant's testimony." *Bunnel v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). Here, the Court finds that the ALJ did give clear and convincing reasons for determining the Plaintiff's testimony was not fully credible regarding the extent of her physical impairments. (Tr. at 18). The Court further finds these reasons to be supported by substantial evidence of record.

Plaintiff received minimal medical treatment due to lack of finances and when she was seen by a physician, her examinations produced only minimal abnormalities. *Id*. For example, her December 2003 medical reports indicate she had normal strength and neurological functions. *Id*. The record also indicates Plaintiff has only slight degenerative changes in her spine and this fact does not support her allegations of disabling limitations. *Id*. The ALJ further notes that Plaintiff's daily activities are not as expected given her complaints of pain and disabling limitations. *Id*. For example, she occasionally exercises one to two hours a day. *Id*. She cleans the house, drives the car, washes dishes, cooks dinner, shops for groceries, dusts, vacuums, goes for walks, and often runs errands. These activities are inconsistent with Plaintiff's allegations of pain. Plaintiff's ability to perform such activities may be seen as inconsistent with the presence of a condition which would preclude full-time work activity. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Consequently, participation in these activities does not support Dr. Bauder's recommendation that Plaintiff refrain from full-time employment.

1 Accordingly, this Court finds that the ALJ was correct in assessing Plaintiff's testimony as
2 not fully credible. (Tr. at 18).

## II. The ALJ's decision must be affirmed if correct legal standards were applied.

In addition to finding that the ALJ's determinations regarding Plaintiff's physical impairments were supported by substantial evidence, the Court finds that the ALJ applied correct legal standards in evaluating Plaintiff's disability claim. The ALJ properly performed the essential five-step sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520 and 416.820 (2003). At step one, the ALJ determined that Plaintiff had not engaged in substantial activity since the date of her alleged disability onset. (Tr. at 17.) The ALJ then proceeded to step two, which requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments as defined by 20 §§ C.F.R. 404.1521 and 416.921. *Id.* The ALJ noted that Plaintiff had the following medically determinable impairments, which are severe when they are considered in combination: fibromyalgia, mild degenerative generalized arthritis, arthralgia, moderately severe pain, fatigue and tendinitis of the left shoulder. *Id.* Pursuant to step three, the ALJ compared Plaintiff's impairments with the list of impairments described in Appendix 1 of the Regulations (20 C.F.R., Part 404, Subpart P, Appendix 1). *Id.* The ALJ found that Plaintiff's impairments, whether considered singly or in combination, do not meet or equal the severity of any listing level impairment and that these findings were corroborated by the opinions of the State agency medical consultants (20 C.F.R. 404.1527(f), 416.927(f), and Social Security Ruling 96-6p). *Id.*

Finally, the ALJ proceeded to steps four and five since a determination in this case could not have been based on medical considerations alone. Step four requires a determination as to whether the claimant has, during the time at issue, the residual functional capacity to perform the requirements of her past relevant work, and if not, perform other work in jobs that exist in significant numbers in the national economy. Residual functional capacity (RFC) is defined as what the claimant can still do despite her

1  limitations due to her impairments (20 C.F.R. §§ 404.1545 and 416.945).  In this case, the
2  ALJ determined that Plaintiff had the RFC to perform work at the light exertional level.
3  (Tr. at 17).  However, the ALJ did note the following restrictions in regard to the
4  Plaintiff's ability to work: 1) Plaintiff should not carry more that 20 pounds at one time
5  occasionally and not more than 10 pounds frequently and 2) Plaintiff requires a stand/sit
6  option and should not do any climbing, crawling, crouching, squatting or kneeling.  *Id*.
7  The Court finds that the ALJ's determination regarding Plaintiffs RFC is consistent with
8  the objective medical evidence presented in the record.

9  Having determined the Plaintiff's RFC, step four further requires the ALJ to
10 determine whether Plaintiff has the ability to return to her past relevant work.  As noted,
11 Plaintiff has been employed as a cashier, sales associate, secretary, care giver and
12 receptionist.  The ALJ found that Plaintiff's RFC would not preclude her from returning
13 to work as a receptionist.  Even if Plaintiff could not return to her past relevant work as a
14 receptionist, she would be able to perform other types of work of which the ALJ
15 discussed in step five.

16 At the fifth step of the evaluation, the burden of proof shifts to the Social Security
17 Administration (SSA) to show that there are other jobs, existing in significant numbers, to
18 which Plaintiff is able to make a vocational adjustment considering her age, education,
19 work experience, and RFC.  In this case, the vocational expert testified that an individual
20 with Plaintiff's vocational characteristics and physical limitations could perform the jobs
21 of: office helper (2,500 jobs in Arizona and 160,000 jobs in national economy), gate
22 guard (1,000 jobs in Arizona and 100,000 jobs nationally), and cashier (1,000 jobs in
23 Arizona and 150,000 jobs nationally).  This testimony shows there are a significant
24 number of jobs of which the Plaintiff has the capacity to perform.  Accordingly, the Court
25 finds that the ALJ correctly performed the five-step evaluation.

26 Plaintiff contends the ALJ committed a legal error by not discussing the opinion of
27 Dr. Kim, Plaintiff's original treating physician. (Dkt. 13).  Specifically, Plaintiff argues
28 that Dr. Kim's opinion is commensurate with that of Dr. Bauder and thus the ALJ erred by

rejecting Dr. Bauder's opinion as unsupportive. (Dkt. 18). Dr. Kim stated that plaintiff should not stand, sit or lift for prolonged periods of time. (Tr. at 126). Dr. Kim also recommended that Plaintiff not lift more than ten pounds. *Id.* While these restrictions described by Dr. Kim may limit Plaintiff's possible scope of employment, they do not support Dr. Bauder's opinion that Plaintiff is not fit for full-time employment. *Id.* Further, Plaintiff admits that Dr. Kim's opinion does not define an inability to work, it merely outlines a set of restrictions that Plaintiff should follow. *Id.* By following Dr. Kim's restrictions, Plaintiff would still retain the RFC to perform light work, which is defined as the ability to carry up to ten pounds (20 C.F.R. § 404.1567(b)). All of the physicians who examined Plaintiff stated that she should not stand or walk for long periods of time. The ALJ noted these concurrences and determined that Plaintiff would require a stand/sit option as a part of any future employment. By following Dr. Kim's instructions, Plaintiff would be able to perform sedentary to light work with a stand/sit option and thus would not be disabled within the meaning of 42 U.S.C. § 423(d)(1)(A).[2] Mr. Kelman, the vocational expert, testified that even when considering the necessity of a stand/sit option, there existed approximately 6,000 jobs statewide. (Tr. at 210). Further, Mr. Kelman testified that Plaintiff could perform other work as a telemarketer, which would also accommodate a stand/sit option, and of which there existed an additional 2,500 to 3,000 jobs statewide.

In light of the aforementioned and other evidence in the record, this Court concludes that even if the ALJ committed an error in not discussing Dr. Kim's opinion, the error was harmless. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). Dr. Kim's opinion still places Plaintiff in the category of a person who is able to perform sedentary

---

[2] 42 U.S.C. § 423 (d)(1)(A) defines "disability" as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

- 10 -

to light work, and therefore, the omission of Dr. Kim's opinion is immaterial. *Id*. The ALJ's failure to discuss Dr. Kim's opinion does not change the outcome of this case and therefore the harmless-error rule applies. *Id*; *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984).

## CONCLUSION

For the foregoing reasons, this Court determines that the decision of the ALJ is supported by substantial evidence. *See Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003); *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). Therefore, summary judgment in favor of Defendant is appropriate as a matter of law. Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Dkt. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

DATED this 22nd day of June, 2007.

_____
Stephen M. McNamee
United States District Judge